**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

---

| | | |
|---|---|---|
| KURT A. GREEN, | : | **VERIFIED COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MERCK & CO., INC., | : | Civil No. |
| | : | |
| Defendant. | : | Honorable |

---

COMES NOW Kurt A. Green, Plaintiff herein, complains of Defendant Merck & Co., Inc., demands trial by jury as to all issues triable by a jury, and as and for causes of action, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff is an individual who resides in Weber County, State of Utah.

2.     Defendant Merck and Co., Inc. (hereinafter "Merck" or "the employer" or "the comapny"), is an entity which does business in the State of Utah and which during all times relevant hereto employed Mr. Green.

3.     This Court has original jurisdiction of this case.  Mr. Green brings this civil action under the ERISA, 29 U.S.C. § 1001 et seq. Jurisdiction in this Court is proper pursuant to federal question jurisdiction, namely the interpretation and application of various provisions of the ERISA, specifically § 502 (e) (1), 29 U.S.C. § 1132 (e) (1).  Mr. Green also brings claims for declaratory relief under 28 U.S.C. § 2206.  Mr. Green also brings supplemental state law claims under the Court's supplemental jurisdiction, 28 U.S.C. § 1367, which are so related to the ERISA claim that they form part of the same case or controversy.

4.     Venue in this Court is proper in that the causes of action alleged herein arose in the District of Utah, ERISA § 502 (e) (2), 29 U.S.C. § 1132 (e) (2).

**STATEMENT OF FACTS**

5.     In approximately 1995, Mr. Green began working for Merck & Co., Inc. (hereinafter referred to as "Merck" or "the company"), as a salesman.

6.     Mr. Green eventually became an executive customer representative, a.k.a. senior sales representative, for Merck.

7.      During the course of his employment with the company, Mr. Green and Merck agreed that Merck would compensate Mr. Green for his work and services in accordance with all company policies, including the Merck Standard Benefits Program and company policies and plans on payment of periodic performance bonuses, including the Merck Sales Incentive Plan.

8.      The Merck Standard Benefits Program includes the Merck & Co., Inc., Separation Benefits Plan (the "Separation Plan") for Nonunion Employees.

9.      On information and belief, Mr. Green alleges that the Separation Plan in effect when Merck ended his employment provided, in pertinent part, as follows:

>       You may be eligible for benefits under the Plan if...your employment is terminated due to a Separation From Service. A Separation From Service is defined as a termination of employment as determined and caused by the Company due to:
>
>       ■    Organizational changes, or
>       ■    A general reduction of the work force.

10.     The Plan also excluded employees who fell into certain specific classes from being entitled to receive benefits under the Separation Plan:

11.     Said Separation Plan also provided that a "qualifying event separation from service" would not occur if certain specific situations caused the separation–namely: "A Separation From Service does not occur: ...If an Eligible

3

Employee is terminated for cause."  The Plan does not define the phrase "termination for cause."

12.    Mr. Green alleges that, essentially, the Separation Plan specified that if the company terminated an employee's employment because of organizational changes or pursuant to a general reduction in force, or for a reason which was not specifically disqualifying, such an employee would be entitled to benefits under the Separation Plan.

13.    The Separation Plan provided that an employee separated for a non-disqualifying reason would be eligible to receive, at his grade level, a certain number of weeks of pay, plus an additional number of weeks of pay per complete year of service the employee had accrued.

14.    Said Separation Plan also provided outplacement benefits.

15.    During his employment with Merck, Mr. Green satisfied all of the terms and conditions of his employment which he needed to satisfy to qualify for the benefits set forth above available to him under the Separation Plan.  He performed his work in a fully satisfactory manner.  Accordingly, he qualified for such benefits/separation/severance/additional compensation.

16.    In the spring of 2009, the company began going through a series of organizational changes, reorganizations and restructurings.

17.     In doing so, it laid off several employees in the same territory in which Mr. Green worked.

18.     In the first round of such layoffs, it did not layoff Mr. Green.

19.     On information and belief, Mr. Green alleges that on August 9, 2009, Merck ended Mr. Green's employment ostensibly for a conduct/performance issue.  But Mr. Green alleges the real and true reason for the ending of his employment was due to the company's interest in continuing to make organizational changes and reduce its workforce and that the reason the company seized upon to justify the termination did not rise to the level of cause, but was designed purely to avoid the obligation which would have otherwise attached to pay Mr. Green benefits under the Separation Plan.

20.     Mr. Green makes this allegation based on several supporting facts, including the findings of an Administrative Law Judge of the Utah Department of Workforce Services who, following an evidentiary hearing on Mr. Green's eligibility for unemployment insurance benefits in April 2010, issued a written decision in which he made the following findings of fact:

a.      "The Employer has an extensive policy concerning prescription drug samples, vouchers, and coupons to ensure compliance with federal, state and Medicaid and Medicare policies.  The distribution, storage and

5

maintenance of samples is critical.  The provision of samples for reducing or discounting the price paid or reimbursed for the Employer's products in exchange for prescribing, purchasing or contracting for the product is prohibited. This type of action could expose the Employer and employees to severe business and legal consequences.  The Employer is required, when it becomes aware of a significant loss or theft of samples or certain other improper sampling activities to sample documentation falsifications, to report by law the circumstances of the incident to the Food and Drug Administration's (FDA) office of compliance. The Employer must report any known or suspected falsification of drug sample documentation to the FDA within 48 hours of the receipt of that information. The policy also outlines that when a doctor signs for samples, they must be delivered at the time the doctor signs the electronic invoice.  Once that transaction is saved, it cannot be modified and must be voided if the number of samples provided do not match the amount requested or recorded.

b.      The [Plaintiff] had gone through a series of trainings on this policy, most recently in September of 2008. The policy outlines [that] violation of the policy could result in disciplinary action up to and including termination from the job.

6

    c. On June 16, 2009, the [Plaintiff] was out on a field visit with his supervisor, who had been the Plaintiff's supervisor for seven months. While at a clinic in Brigham City, Utah, the doctor signed for a group of samples based on the request from an assistant there at the clinic. The [Plaintiff] went to the car to get the samples and bring them to the office. When the [Plaintiff] went to the sample cabinet, there was not enough room for all of the samples requested for one type of medication. This clinic had previously informed the Plaintiff that if there was not room for the samples, that he should not try to overcrowd [the cabinet] or leave them [the samples].

    d. As the [Plaintiff] was walking out of the clinic with the supervisor, the supervisor noticed that there were still samples in the [Plaintiff's] hands. The supervisor asked the [Plaintiff] why he had not left the samples. The [Plaintiff] stated that there had not been room for those samples. The [Plaintiff] and the supervisor were in a hurry to get to another clinic on their schedule, so the supervisor made no other comments about this incident until they arrived at the other clinic. When the Plaintiff arrived at the other clinic, he made mention that he would leave the samples signed for at the other clinic at this clinic, even though they [the clinics] were not related.

e.      The supervisor did not tell [Plaintiff] that what he was doing was a violation of the policy and could net be done.  The supervisor did not tell the [Plaintiff] that he should have voided the other sample transaction and create a new one to accurately reflect the samples left at the previous clinic.  The [Plaintiff] did not feel his actions were contrary to the Employer's policies since he was not trying to sell the samples or distribute them for some sort of kickback or gain.

f.      The following day, the supervisor reported to the Employer that the [Plaintiff] had violated its policy concerning sample disbursement by diverting samples to someone other than the person who had signed for the samples.

g.      The [Plaintiff] had gone on vacation at this point.  When the [Plaintiff] returned from his vacation, he was told he was on suspension while the Employer completed its investigation into the reported  incident.

h.      After the Employer completed its investigation, it notified the [Plaintiff] he was being discharged from the job for a sample diversion violation.  The [Plaintiff] had never had any other issues of performance in the past.  The [Plaintiff] had never received warnings about ether issues in the past."

8

21.     In his written decision, the Utah Department of Workforce Services Administrative Law Judge made the following conclusions of law:

a.     "The Employer has failed to establish the just cause element of culpability in this discharge....

b.     The [Plaintiff] had worked for the Employer since 1995 with no incidents of performance or behavior concerns.  The [Plaintiff] made a good faith error in judgment when he did not issue a revised sample disbursement at the clinic where there was not enough room for all of the samples it had requested.  The [Plaintiff's] direct supervisor was with him at the time of this incident and made no statement to the [Plaintiff] that he was violating the Employer's policy about sample diversion, and that he should take steps immediately to correct this issue.  The supervisor...condoned the [Plaintiff's] behavior by not telling the [Plaintiff] that what he was doing was incorrect."

22.     The Administrative Law Judge also concluded:

a.     "The Employer failed to establish the just cause element of knowledge in this discharge....

b.     The [Plaintiff] reasonably believed that as the supervisor was watching what was occurring, the [Plaintiff] was in compliance with the

policy since he was net trying to divert the samples for gain, but trying to comply with the previous directive from this clinic not to leave samples if there was not room for them in the sample storage area."

23.    The Administrative Law Judge also concluded:

a.    "The Employer failed to establish the just cause element of control in this discharge....

b.    A reasonable person would have thought that if the supervisor was present and watching the interactions and had a concern about what was occurring, the supervisor would make an immediate comment that the [Plaintiff's] actions violated the Employer's policy."

24.    Accordingly, Mr. Green alleges that on or about August 9, 2009, the company separated Mr. Green from service by concocting a fiction that Mr. Green had engaged in document falsification and had violated a company policy.  Mr. Green alleges that the company's termination of his employment was, in economic reality and substance, a continuation of a corporate restructuring and downsizing and that the reason the company articulated to justify terminating Mr. Green's employment was a deliberate pretext to manufacture cause when there was no cause so as to justify avoiding paying Mr. Green any benefits under the Separation Plan.

25.     In further support of such allegation, Mr. Green also alleges as follows:

26.     Such reasons for the termination were false and invalid.

27.     Mr. Green's actions during the incident in question were fully known to, acquiesced in, and fully ratified by Mr. Green's supervisor/manager, yet the company did not discipline or terminate Mr. Green's supervisor/manager.

28.     Such termination came without advance warning, and without progressive discipline, which the company typically provided to its sales employees.

29.     Such termination was without cause, good cause or just cause, which the company typically required before terminating a long-tenured employee's employment.

30.     In any event, Mr. Green alleges the circumstances did not rise to the level of cause and did not merit a termination of employment and a denial of eligibility for benefits under the Separation Plan.

31.     Accordingly, Mr. Green alleges that the company's decision to terminate his employment was, in reality, a termination due to a corporate organizational change in the form of a restructuring or general reduction in force and not due to any serious or gross misconduct or cause on Mr. Green's part.

32.     Mr. Green alleges that such reasons for termination, even if assumed to be partially or wholly valid, were not disqualifying under the Plan as they did not fall within any of the reasons/situations which the Plan specified would be disqualifying.

33.     In other words, Mr. Green alleges he qualifies for separation/severance benefits under the Separation Plan and that in order to try and deprive Mr. Green of benefits under the Separation Plan, the company decided to terminate Mr. Green's employment, using an incident which did not justify termination as a basis to terminate Mr. Green's employment so as to manufacture some "cause."

34.     Accordingly, Mr. Green alleges that despite Mr. Green's accomplishing everything he needed to accomplish to qualify for the benefits/additional compensation set forth in the Separation Plan, the company has declined or, in any event, has failed to pay him such benefits/additional compensation.

35.     Mr. Green duly inquired of the company regarding payment of such benefits under the Separation Plan.

36.     In response, the company declined or refused to honor his inquiry.

37.    In response to Mr. Green's inquiries, the company failed to give him a contractually based or otherwise justifiable reason for its decision to deny him payment of such benefits/additional compensation and misrepresented to Mr. Green that he had no claims for benefits under the Separation Plan, which induced Mr. Green to not take any steps to pursue such claims until the present filing.

38.    Thus, Mr. Green also alleges that after the company terminated his employment and he made efforts to inquire about and to make a claim for benefits under the Separation Plan, the company stalled and misdirected his efforts which caused him to believe he did not have any claims under the Plan and could not make any claims under the Plan, which caused him to not take any steps to pursue such claims until the present filing.

39.    Mr. Green alleges he has exhausted any administrative procedures or steps under the Plan or should be excused from doing so because of the company's efforts to stall and misinform him as to his rights under the Separation Plan.  Furthermore, he alleges that because the company has clearly indicated to him that it is treating his termination as a termination for cause, requiring him to exhaust administrative remedies would be futile.

40.    As set forth above, on April 29, 2010, The Utah Department of Workforce Services, through Administrative Law Judge John Davenport, held an

evidentiary hearing on the issue of whether the company had just cause to terminate Plaintiff's employment and, therefore, whether the Department should deny Plaintiff eligibility for unemployment insurance benefits.

41.     In a decision dated April 29, 2010, Administrative Law Judge Davenport held that Plaintiff was not discharged for disqualifying reasons, that the Employer had failed to establish that it had just cause to terminate Plaintiff's employment and that Plaintiff was eligible for unemployment insurance benefits.

42.     On information and belief, Mr. Green alleges that Merck did not appeal or further challenge the Administrative Law Judge's decision.  Accordingly, Plaintiff alleges the Department of Workforce Services' decision is entitled to res judicata and/or collateral estoppel effect on the issue of whether the company's termination of Plaintiff's employment was for "cause," as such term is used in the Separation Plan and Sales Incentive Plan or otherwise.

43.     Mr. Green alleges the company lacks a Plan based or contractually justifiable reason for its decision to deny him payment of such benefits/additional compensation.

44.     Mr. Green had fourteen complete years of service for the company.  At his grade level under the Plan at issue, Mr. Green is entitled to a total of

4 weeks + 28 weeks = 32 weeks of pay/separation benefits.  The company's failure to

pay him such benefits has caused him injuries, losses and damages.

      45.     By filing this civil action, Mr. Green seeks to challenge the

company's decisions to deem his termination as a termination for cause and to not pay

him the benefits/additional compensation under the Separation Plan which he has

earned for his work and efforts during his employment with Merck and for which he

qualifies under the Plan.

## FIRST CAUSE OF ACTION
## FOR DECLARATORY RELIEF

      46.     Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 45 above as if alleged in full herein.

      47.     Plaintiff alleges actual controversies exist regarding the

definition of "cause," regarding whether he engaged in actions constituting "cause"

for termination, whether the company terminated him for "cause" or for reasons

which were non-disqualifying under the Separation Plan and whether he is entitled to

benefits under the Separation Plan.

      48.     In accordance with 28 U.S.C. § 2201 (a), Plaintiff asks the Court

to declare the rights and other legal relations of himself (and Merck) with respect to

his eligibility for benefits under the Separation Plan.

49.     If the Court determines Plaintiff's rights as against Merck in a way favorable to Plaintiff, Plaintiff also seeks, pursuant to 28 U.S.C. § 2202, whatever further or proper relief may be appropriate, including a judgment for the benefits sought, interest and reasonable attorney's fees and court costs.

## SECOND CAUSE OF ACTION
## UNDER ERISA FOR RECOVERY OF BENEFITS

50.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51.     On information and belief, Mr. Green alleges that the Merck Separation Plan is n employee welfare or benefit Plan subject to the ERISA.

52.     Mr. Green is a participant or beneficiary in such Plan.

53.     Mr. Green has performed all of the conditions required of him by the above-named Plan to qualify for benefits under the Separation Plan.

54.     As set forth above, Mr. Green alleges that the company terminated Mr. Green for a reason which is not disqualifying to the receipt of benefits under the Separation Plan.

55.     Accordingly, Mr. Green alleges he is eligible for and qualifies for benefits under the Separation Plan.

56.     Merck failed and neglected, and is still failing and neglecting, to pay Mr. Green the benefits for which he is eligible under the Separation Plan.

16

57.     Soon after his termination of employment, Mr. Green inquired of responsible company officials as to whether he was eligible for benefits under the Separation Plan.

58.     Despite Mr. Green's being prima facie eligible for benefits under the Separation Plan, one or more Merck agents represented to him that he was not eligible.  Such a representation was false and misleading.

59.     Nonetheless, as a result of such misinformation and Mr. Green's reasonable reliance thereon, Mr. Green refrained from pursuing such benefits at the time and otherwise exhausting his administrative remedies.

60.     Because of Merck's clearly stated position that it terminated Plaintiff's employment for cause and that he, therefore, would not qualify for benefits under the Separation Plan, Plaintiff alleges further exhaustion of his administrative remedies would be futile and should be excused from doing so.

61.     Mr. Green alleges that any questions as to the timeliness of his claim should be resolved in his favor due to the company's misrepresentations on which he reasonably relied to his detriment and that he has exhausted all his administrative remedies under the Plan and/or that further pursuit of administrative remedies should  be excused as being futile.

62.     In any event, Merck has failed and neglected, and is still failing and neglecting, to pay Mr. Green the benefits under the Separation Plan for which he is eligible.

63.     Merck's reasons for doing so are arbitrary, capricious and unreasonable.

64.     By failing to pay Mr. Green benefits under the Separation Plan, Merck has deprived Mr. Green of his rights to benefits under the Plan, in violation of ERISA § 502 (a) (1) (b) and 29 U.S.C. § 1132 (a) (1) (B).

65.     Such actions and inactions have caused Mr. Green prejudice, harm, injury, loss and damage.

66.     Such actions and inactions have also necessitated Mr. Green to need to hire counsel and to incur attorney's fees and costs.

67.     ERISA allows and provides means for Mr. Green to enforce his claim for benefits under the Separation Plan.

68.     Defendant Merck is liable to pay Mr. Green the amount of benefits determined to be owed him under the Separation Plan, plus pre- and post-judgment interest to the date of payment, and reasonable attorney's fees and related costs incurred in bringing this action, all pursuant to 29 U.S.C. § 1132 (g).

**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT**

18

69.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 69 above as if alleged in full herein.

70.     In the event Mr. Green's claim for benefits under the Separation Plan is not governed by the ERISA but by common law contract principles, Mr. Green brings the claims set forth below in his Third, Fourth, Fifth, Sixth and Seventh Causes of Action, to wit:

71.     Authorized agents of Merck made specific, express verbal and/or written offers and promises to Mr. Green that if Mr. Green satisfied the necessary requirements he needed to satisfy to qualify for benefits/additional compensation under the Separation Plan, Merck would pay Mr. Green such benefits/additional compensation.  Those offers/promises were specific and definite and made by those with authority to make such offers/promises.  Mr. Green accepted those offers.  Mr. Green reasonably relied upon such promises and, in reasonable reliance on those promises, changed his position to his legal detriment.

72.     Such facts, as set forth above, created contractual rights and obligations between Mr. Green and Merck with respect to qualifying for and receiving payment of benefits/additional compensation under the Separation Plan.

73.     During Mr. Green's employment with Merck, he satisfied all the requirements he needed to satisfy to earn such benefits/additional compensation.

74.     Merck has failed to pay him such benefits/additional compensation in full and on time.

75.     Such actions and inactions on the part of Merck constitute a breach of the contract set forth above.

76.     Such breach of contract has caused Mr. Green injury, loss and damage in at least the amount of the benefits set forth above and other incidental and consequential damages.

### FOURTH CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

77.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 76 above.

78.     All contracts entered into the State of Utah have inherent in them an implied covenant of good faith and fair dealing.

79.     The covenant of good faith and fair dealing provides that while performing the obligations of the contract at issue, neither party will intentionally do anything substantive to deprive the other party of the benefits of the contractual arrangement.

80.     At all times relevant to Mr. Green's employment with Merck, Mr. Green was a resident of the State of Utah, had a contract of employment, express or implied, with Merck, and was a beneficiary of such implied covenant in the contract.

81.     Mr. Green fully performed his obligations under his contract with Merck and did nothing to deprive Merck of the benefits of his contract with Merck.

82.     Merck, by (a) requiring Mr. Green to work but not paying Mr. Green full or reasonable compensation for his work or the fair market value of his work and services; and/or (b) introducing requirements to be met in order to qualify for benefits/additional compensation at variance with the parties' understanding and agreement; and (c) interpreting and applying such extraneous requirements in an arbitrary and unfair manner, Merck deprived Mr. Green of the benefits of Mr. Green's contract and violated the implied covenant of good faith and fair dealing inherent in above-mentioned contract.

83.     Merck's breach of the implied covenant of good faith and fair dealing in Mr. Green's contract has caused Mr. Green injury, loss and damage in at least the amount of the benefits set forth above and other incidental and consequential damages.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

84.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 83 above.

85.     During Mr. Green's employment with Merck, Mr. Green showed up for work, worked hard and performed well for Merck.

86.     Mr. Green's work and services conferred a valuable benefit on Merck in excess of what Merck has paid him for such services.

87.     Merck did not and has not paid Mr. Green the reasonable, full fair market value of the valuable benefit by which Mr. Green's work and services benefitted Merck.

88.     Mr. Green alleges it would unjustly enrich Merck for Merck to receive the benefit of Mr. Green's work and services without paying him reasonable compensation therefor, and, therefore, Mr. Green claims entitlement to the reasonable, full fair market value of the valuable benefit by which Mr. Green's work and services unjustly enriched Merck, as set forth above.

89.     Mr. Green asserts a claim of unjust enrichment for the reasonable, full fair market value of the valuable benefit which Mr. Green, by his work and services, conferred upon Merck, as set forth above.

90.     As set forth above, this value is alleged to be approximately 32 weeks of pay.

## SIXTH CAUSE OF ACTION
## QUANTUM MERUIT

91.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 90 above.

92.     Mr. Green was willing to work, did work hard and performed well for Merck to Merck's substantial benefit.

93.     During Mr. Green's employment with Merck, Mr. Green rendered valuable work and services to Merck.  Mr. Green had a reasonable expectation that he would receive reasonable compensation for his work and services.  But Merck has not paid Mr. Green such reasonable compensation for the work and services Mr. Green performed for Merck.

94.     Merck did not and has not paid Mr. Green for the reasonable, full fair market value of Mr. Green's work and services for Merck.  Had Mr. Green not been willing to perform his work for Merck at the artificially low base salary with the mutual understanding that he would receive benefits, Merck would have had to hire someone to do the work and services Mr. Green rendered at substantial additional cost to Merck.

95.     Thus, Mr. Green asserts a claim in quantum meruit for the reasonable, full fair market value of his work and services for Merck.

96.     As set forth above, this value is alleged to be approximately 32 weeks of pay.

## SEVENTH CAUSE OF ACTION
## ATTORNEY'S FEES

97.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 96 above.

98.     The additional compensation in the form of benefits under the Separation Plan set forth above constitutes a form of "wages" within the meaning of Utah Code Annotated § 34-27-1.

99.     In approximately August or September 2009, Mr. Green made a verbal demand on Merck via a phone conversation with Patricia Johnson, Human Resources, for the additional compensation he believed the company owed him under the Separation Plan.

100.    On or about February 23, 2011, Mr. Green made a written demand on Merck, via letter, for the additional compensation he alleges the company owed him under the Separation Plan.

101.    This was a "demand for wages" as required by Utah Code Annotated § 34-27-1.

102.    After receiving such demands from Mr. Green, Merck did not pay Mr. Green the benefits/additional compensation he claimed in such demand.

24

103.   More than fifteen (15) days have elapsed between the making of the demand and the bringing of the instant civil action.

104.   Mr. Green has cause to bring suit for such wages earned and due according to the terms of his employment with Merck.  If Mr. Green is able to establish by the decision of the Court that the amount for which he has brought suit is justly due him, and if the Court determines Mr. Green's demand was for a sum not in excess of the amount so found due, the Court should award Mr. Green a reasonable attorney's fee in addition to the amount found due for wages, to be taxed as costs of suit.

## EIGHTH CAUSE OF ACTION
## FOR DECLARATORY RELIEF–PERFORMANCE BONUS

105.   Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 104 above.

## ADDITIONAL FACTUAL ALLEGATIONS

106.   During Mr. Green's employment with Merck, authorized agents of Merck made specific, express verbal and/or written offers and promises to Mr. Green that if Mr. Green satisfied the necessary requirements he needed to satisfy to qualify for a year end sales representative performance bonus, Merck would pay Mr. Green such a performance bonus for every year or part of year which Mr. Green worked.  While the exact requirements/benchmarks to earn a sales performance bonus

could and did vary from year to year, those offers/promises were specific and definite and made by those with authority to make such offers/promises.

107.   Mr. Green accepted such offers.

108.   Mr. Green reasonably relied upon such promises and, in reasonable reliance on those promises, worked hard to qualify for such bonuses and changed his position to his legal detriment.

109.   On information and belief, Mr. Green alleges that the agreement between himself and Merck as to payment of sales representative performance bonuses may be contained or reflected, in whole or in part, in a document entitled "Sales Incentive Plan."

110.   On information and belief, Mr. Green alleges that the Sales Incentive Plan which may have been in effect at the time Merck terminated his employment specifies that participants whose employment is terminated voluntarily, as determined and caused by the company due to organizational changes or a general reduction of workforce consistent with the Separation Plan and who are determined by the Company, in its sole discretion, to be eligible employees, are eligible for benefits under the Sales Incentive Plan.

111.   On information and belief, Mr. Green further alleges that Merck has had a practice with respect to any sales representatives it terminated in Mr.

Green's region/district for any reasons other than serious or gross misconduct, of paying prorated yearly bonuses to such sales representatives, based on every full month of the year the sales representative actually worked.

## CLAIM

112.   Such facts, as set forth above, created contractual rights and obligations between Mr. Green and Merck with respect to qualifying for and receiving payment of sales representative performance bonuses on an annual basis.

113.   Plaintiff alleges actual controversies exist regarding the definition of "cause," regarding whether he engaged in actions constituting cause for termination, whether the company terminated him for cause or for reasons which were non-disqualifying and whether he is entitled to payment of a sales representative performance bonus for 7/12ths of 2009.

114.   In accordance with 28 U.S.C. § 2201 (a), Plaintiff asks the Court to declare the rights and other legal relations of himself (and Merck) with respect to his eligibility for a sales representative performance bonus for 7/12ths of 2009.

115.   If the Court determines Plaintiff's rights as against Merck in a way favorable to Plaintiff, Plaintiff also seeks, pursuant to 28 U.S.C. § 2202, whatever further or proper relief may be appropriate, including a judgment for the benefits sought, interest and reasonable attorney's fees and court costs.

## NINTH CAUSE OF ACTION
## BREACH OF CONTRACT–PERFORMANCE BONUS

116.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 115 above.

117.    During Mr. Green's employment with Merck during the first seven months of 2009, he satisfied all the requirements he needed to satisfy to earn such a performance bonus for his work during the first seven months of 2009.

118.    Merck has failed to pay him such a performance bonus for his work during the first seven months of 2009.

119.    Such actions and inactions on the part of Merck constitute a breach of the contract set forth above.

120.    Such breach of contract has caused Mr. Green injury, loss and damage in the amount of approximately $24,333.33 (representing an estimated bonus of $36,520 x 7/12, for the first seven of the twelve months of 2009, during which he worked) and other incidental and consequential damages.

## TENTH CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

121.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 120 above.

122.   All contracts entered into the State of Utah have inherent in them an implied covenant of good faith and fair dealing.

123.   The covenant of good faith and fair dealing provides that while performing the obligations of the contract at issue, neither party will intentionally do anything substantive to deprive the other party of the benefits of the contractual arrangement.

124.   At all times relevant to Mr. Green's employment with Merck, Mr. Green was a resident of the State of Utah, had a contract of employment, express or implied, with Merck, and was a beneficiary of such implied covenant in the contract.

125.   Mr. Green fully performed his obligations under his contract with Merck and did nothing to deprive Merck of the benefits of his contract with Merck.

126.   Merck, by (a) requiring Mr. Green to work but not paying Mr. Green full or reasonable compensation for his work or the fair market value of his work and services; and/or (b) introducing requirements to be met in order to qualify for a sales performance bonus which were at variance with the parties' understanding and agreement; and (c) interpreting and applying such extraneous requirements in an arbitrary and unfair manner, Merck deprived Mr. Green of the benefits of Mr. Green's contract and violated the implied covenant of good faith and fair dealing inherent in above-mentioned contract.

29

127.   Merck's breach of the implied covenant of good faith and fair dealing in Mr. Green's contract has caused Mr. Green injury, loss and damage in at the amount of approximately $24,333.33 and other incidental and consequential damages.

## ELEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

128.   Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 127 above.

129.   During Mr. Green's employment with Merck, Mr. Green showed up for work, worked hard and performed well for Merck.

130.   Mr. Green's work and services conferred a valuable benefit on Merck in excess of what Merck has paid him for such services.

131.   Merck did not and has not paid Mr. Green the full fair market value of the valuable benefit by which Mr. Green's work and services for Merck benefitted Merck.

132.   Mr. Green alleges it would unjustly enrich Merck for Merck to receive the benefit of Mr. Green's work and services without paying him reasonable compensation therefor, and, therefore, Mr. Green claims entitlement to the full fair market value of the valuable benefit by which Mr. Green's work and services unjustly enriched Merck, as set forth above.

30

133.   Mr. Green asserts a claim of unjust enrichment for the full fair market value of the valuable benefit which Mr. Green, by his work and services, conferred upon Merck, as set forth above.

134.   As set forth above, this value is alleged to be approximately $24,333.33.

**TWELFTH CAUSE OF ACTION**
**QUANTUM MERUIT**

135.   Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 134 above.

136.   Mr. Green was willing to work, did work hard and performed well for Merck.

137.   During Mr. Green's employment with Merck, Mr. Green rendered valuable work and services to Merck.  Mr. Green had a reasonable expectation that he would receive proper and equitable compensation for his work and services.  But Merck has not paid Mr. Green such reasonable compensation for the work and services Mr. Green performed for Merck.

138.   Merck did not and has not paid Mr. Green for the full fair market value of Mr. Green's work and services for Merck.  Had Mr. Green not been willing to perform his work for Merck at the artificially low base salary with the mutual understanding that he would receive a sales performance bonus, Merck would have

had to hire someone to do the work and services Mr. Green rendered at substantial additional cost to Merck.

139.   Thus, Mr. Green asserts a claim in quantum meruit for the reasonable, full fair market value of his work and services for Merck.

140.   As set forth above, this value is alleged to be approximately $24,333.33.

## THIRTEENTH CAUSE OF ACTION
## ATTORNEY'S FEES

141.   Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 140 above.

142.   The additional compensation in the form of a sales performance bonus, as set forth above constitutes a form of "wages" within the meaning of Utah Code Annotated § 34-27-1.

143.   On or about February 22, 2011, Mr. Green made a written demand on Merck, via letter, for the additional compensation he alleges the company owes him.

144.   This was a "demand for wages" as required by Utah Code Annotated § 34-27-1.

145.   After receiving such demand from Mr. Green, Merck did not pay Mr. Green the additional compensation in the form of a sales performance bonus he claimed in such demand.

146.   More than fifteen (15) days have elapsed between the making of the written demand and the bringing of the instant civil action.

147.   Mr. Green has cause to bring suit for such wages earned and due according to the terms of his employment with Merck.  If Mr. Green is able to establish by the decision of the Court that the amount for which he has brought suit is justly due him, and if the Court determines Mr. Green's demand was for a sum not in excess of the amount so found due, the Court should award Mr. Green a reasonable attorney's fee in addition to the amount found due for wages, to be taxed as costs of suit.

### PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth herein and the evidence to be assembled, discovered, adduced and propounded in support of these allegations, Mr. Green requests the Court to award him (1) appropriate declaratory relief, declaring that the facts and circumstances relating to the termination of his employment are not disqualifying as to his claim for benefits under the Separation Plan; (2) a money judgment equal to the value of his earned but unpaid

33

benefits/additional compensation under the Separation Plan; (3) damages for breach of contract; (4) damages for breach of the covenant of good faith and fair dealing; (5) a disgorgement of the amount by which Mr. Green's work and services has unjustly enriched Merck; (6) the reasonable, fair market value of the services Mr. Green performed for Merck for which he has not received full compensation; (7) reasonable attorney's fees and costs, whether pursuant to the Utah Payment of Wages Act or otherwise; (8) appropriate declaratory relief as to his claim for a sales representative performance bonus for that portion of 2009 he worked for Merck; (9) damages for breach of contract as to the sales representative performance bonus; (10) damages for breach of the implied covenant of good faith and fair dealing as to payment of a sales representative performance bonus for 7/12ths of 2009; (11) a disgorgement of this amount by which Mr. Green's sales performance in 2009 has unjustly enriched Merck; (12) the reasonable, fair market value of the sales performance Mr. Green performed for Merck in 2009 for which he has not received full compensation; (13) reasonable attorney's fees and costs, whether pursuant to the Utah Payment of Wages Act or otherwise.

DATED this 2nd day of August, 2013.

/s/ David J. Holdsworth

David J. Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Kurt A. Green, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing VERIFIED COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.


_/s/ Kurt A. Green_____
Kurt A. Green


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20____.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

_____